[INSURANCE.]

## JANNEY v. The COLUMBIAN INSURANCE COMPANY.

Under a policy containing the following clause: "It is declared and understood, that if the above mentioned brig, after a regular survey, should be condemned for being unsound or rotten, the insurers shall not be bound to pay the sum hereby insured, nor any part thereof." · A survey by the Master and Wardens of the port of New-Orleans, which was obtained at the instance of the master, who was also a part owner, and was transmitted by him to the other part owner, and by the latter laid before the underwriters as proof of the loss, stated, that the Wardens "ordered one streak of plank fore and aft to be taken out, about three feet below the bends on the starboard side; and found the timber and bottom plank so much decayed, that we were unanimously of opinion her repairs would cost more than she would be worth afterwards, and that it would be for the interest of all concerned she should be condemned as unworthy of repair on that ground. We did, therefore, condemn her as not seaworthy, and as unworthy of repair; and, therefore, according to the powers vested by law in the Master and Wardens of this port, we do hereby order and direct the aforesaid damaged brig to be sold at public auction for the account of the insurers thereof, or whomsoever the same may concern. ' It was held, that the survey was conclusive evidence, under the clause, to discharge the insurers from their liability for the loss.

·Quære, How far the State Legislatures may authorize the condemnation of vessels as unseaworthy, by tribunals or boards constituted under State authority, in the absence of any general regulation made by Congress, under its power of regulating commerce, or as a branch of the admiralty jurisdiction?

However this may be, the above condemnation not being specially authorized by any law of the State of Louisiana, it would not have been considered as conclusive evidence within the clause, had not the condemnation been obtained by the master, as the agent of the owners, and afterwards adopted by them as proof of the facts stated therein.

ERROR to the Circuit Court for the District of Columbia.

This was an action brought in the Court below by the plaintiff in error, Janney, against the defendants in error, the Columbian Insurance Company, on a policy of insurance on the brig Hunter, Grinnolds, lost or not lost, from Alexandria to Norfolk and New-Orleans; in which policy there was the following clause: " It is declared and understood, that if the above mentioned brig, after a regular survey, should be condemned for being unsound or rotten, the insurers shall not be bound to pay the sum hereby insured, nor any part thereof."

On the first trial of the cause, the jury, not agreeing on a verdict, was discharged; and, on the second trial, a verdict was found for the defendants, under an instruction from the Court to the following effect, as stated in the bill of exceptions:

And the plaintiff offered to prove, by parol evidence, that at the time that the said brig Hunter sailed from the port of Alexandria upon her voyage aforesaid, and at the time she was surveyed and condemned at New-Orleans as herein after mentioned, she was sound, and that the repairs of vessels, and materials of ship-building, at that place, were very high; and that the prices there would have amounted to two or three times as much as the prices would have amounted to in the port of Alexandria; and that the repairs of the said vessel, arising from the injuries which she

had sustained in her voyage to New-Orleans, would not have amounted to less, in that place, than 2,000 dollars, independent of the detention of the vessel, and the other necessary expenses of the voyage. But the defendants produced, and read in evidence to the jury, a regular survey, called upon the state and condition of the vessel on her arrival at New-Orleans, by the said Capt. Grinnolds, master and part owner; and by him transmitted to the plaintiff to be laid before the insurance office as evidence of loss; and actually laid before such office by the plaintiff accordingly; and, at the former trial, read on the part of the plaintiff in evidence to the jury, in the words following:

1825.

Janney
v.
Columbian
Ins. Co.

*" Port Wardens' Office,*
*New-Orleans,* 13th *January,* 1819.

" We, the subscribers, the Wardens of this port, having been thereto required by Capt. Grinnolds, did repair on board the brig Hunter, commanded by him, and lately arrived from Norfolk, and, assisted by A. Seguin, carpenter, surveyed her condition. Found twenty-five feet of quarter rail, and seventy-five feet of waist boards, and the boat's david, carried away; the oakum of the break of the quarter-deck started, and also the strings and drifts; the cambouse stove, and its house carried away; the vessel was reported to have leaked much at sea. All which, therefore, according to the powers vested by law in the

1825.

Janney
v.
Columbian
Ins. Co.

Master and Wardens of this port, we do hereby certify.

"      (Signed,)      JAMES RINKER,
                      E. MARCHAND,
                      J. M. CARTANDE.

"A true copy of the records in this office,
"GEORGE POLLOCK, *Warden and Secretary.*"

"*Port Wardens' Office,*
*New-Orleans, 24th February,* 1819.

"We, the subscribers, Wardens of this port, having been thereunto required by Captain Grinnolds to inspect the condition of the brig Hunter, commanded by said Captain Grinnolds, from Norfolk, did repair to the ship-yards, and assisted by Andrew Seguin and Robert Fell, ship-carpenters, and for the greater satisfaction of said master, by Captain Wayne of the ship Ariadne, and Captain Williams of the brig Maryland, surveyed her condition. We ordered one streak of plank fore and aft to be taken out, about three feet below the bends on the starboard side, and found the timbers and bottom plank so much decayed, that we were unanimously of opinion her repairs would cost more than she would be worth afterwards; and that it would be for the interest of all concerned, she should be condemned as unworthy of repair on that ground. We did, therefore, condemn her as not seaworthy, and as unworthy of repair; and, therefore, according to the powers vested by law in the Master and Wardens of this port, we do hereby order and direct the aforesaid damaged brig to be sold at

public auction, for account of the insurers thereof, or whomsoever the same may concern.

1825.

" (Signed,) JAMES RINKER,
E. MARCHAND,
J. M. CARTANDE."

" *Port Wardens' Office,*
*New-Orleans,* 22d *March,* 1819.

" We, the subscribers, Wardens of this port, do hereby certify, to whom it may concern, that the goods mentioned in the annexed account of sales, were sold at public auction, by our order in our presence, by Dutillet & Sagony, commissioned auctioneers, after having been advertised in due form of law ; and that the said account of sales is, in all respects, just and true.

" In testimony whereof, we have countersigned the said account, and now grant this certificate as the law directs.

" (Signed,) EM. MARCHAND,
J. M. CARTANDE.

" A true copy of the records in this office,
" GEORGE POLLOCK, *Warden and Secretary.*

Whereupon the defendants prayed the opinion of the Court, and their instruction to the jury, that the said survey is conclusive evidence that the said vessel was condemned for being unsound or rotten ; and that it is not competent for the plaintiff to produce evidence inconsistent with said survey, to prove that the said vessel was, in fact, sound at the time of such survey ; and that, upon such evidence, the plaintiff is not entitled

to recover under the policy given in evidence in this case ; and the Court so accordingly instructed the jury, and refused to suffer the said evidence to be given to the jury.

*Feb. 25th.*  A verdict and judgment thereon having been rendered for the defendants, the cause was brought by writ of error to this Court ; and was argued by Mr. *Swann* for the plaintiff, and by Mr. *Jones* for the defendants.

*March 15th.*  Mr. Justice JOHNSON delivered the opinion of the Court.

This case varies somewhat in form, but nothing in principle, from the case of *Dorr v. The Pacific Insurance Company,* (7 *Wheat. Rep.* 582.) The material point of distinction is this ; in that case the discharge of the underwriters was made to depend on a regular survey alone ; the stipulation was, " that if the vessel, upon a regular survey, should be thereby declared unseaworthy by reason of her being unsound or rotten," the policy should be discharged. And hence, although a condemnation in the Vice Admiralty Court of the Bahamas was produced in evidence in that cause, the Court makes no other use of it, than as the means of authenticating the survey upon which the decree was made.

The terms of the present stipulation are these : " if the above mentioned brig, after *a regular survey* should be *condemned* for being unsound or rotten," the insurers are to be discharged. From which it is obvious, that both a regular survey and a condemnation are in contemplation

of the parties. And the question is, whether the bill of exceptions makes out the *casus fœderis.*

This gives rise to three questions : Was the survey regular ? was the condemnation conformable to the contract ? and does the one or the other bring the case within the terms of the stipulation ? With regard to the survey, the case is a very clear one. The laws of Louisiana contain ample and judicious provisions on this subject. The Master and Wardens of the Port of Orleans are vested with various powers, and required to keep an office and a book of record open to all the world; they possess in fact, some of the attributes of a municipal Court. With regard to damaged vessels, and vessels deemed unfit to proceed to sea, they, or any two of them, with one or more skilful carpenters, are constituted surveyors; and the laws enjoin, " that they shall, upon every such survey, certify under their hands, how the vessels so surveyed appeared to them, and shall cause entries to be made in a book to be kept for that purpose in their office." A survey, therefore, made by them, pursuant to this law, and at the call of the captain of this vessel, was emphatically a regular survey.

The difficulty in the cause arises upon the next member of the clause under consideration, to wit, that which requires a condemnation. The certificate of the survey purports, that there was, in fact, a condemnation of the vessel ; but there is nothing in the laws of Louisiana which vests the power expressly in the Master and Wardens of the Port to condemn a vessel as unfit for sea or

1825.

Janney
v.
Columbian
Ins. Co.

1825.

Janney
v.
Columbian
Ins. Co.

unworthy of repair. As to damaged merchandise, the power is expressly given; but as to ships, it appears to be exercised as incidental to the surveying power. In other parts of the world, it is very generally exercised as an incident to the admiralty power; and the admiralty jurisdiction under our system, can only be exercised under the laws of the United States.

These considerations are only thrown out to preclude the supposition that the Court has not had them in mind whilst considering this subject. We do not mean to intimate that the power is one which cannot be exercised under municipal regulations. On the contrary, there are many reasons for maintaining that it may be so exercised until Congress may think proper to establish some general rule upon the subject, either as one appertaining to trade and commerce, or within the admiralty jurisdiction. If, therefore, there had been express provision on the subject in the laws of Louisiana, or it had been shown to be recognised as a power known and habitually exercised in that port, as an incident to the surveying power, we should have felt no difficulty on this point. As it is, we must place our opinion on another ground, one, however, which is also noticed in Dorr's case. It is this, that the condemnation, such as it is, was obtained through the instrumentality of the master, who, as such, represented his employers, and who was, in fact, in this instance, also a part owner. In this condemnation he acquiesced, broke up the voyage, and sold the vessel; and the certificates now be-

fore this Court were transmitted to the under-
writers, and actually in a former trial between
the same parties, made evidence to prove the
fact which they ascertain. It is then too late
for the plaintiffs to dispute the validity or verity
of the act of condemnation. They have recog-
nised the jurisdiction of the tribunal they ap-
pealed to, to obtain the survey, as sufficient also
to make the condemnation, and must be held to
abide by it as such. All further and other inves-
tigation in a more competent tribunal, if there
was such, was rendered impossible by their act.

It only remains, then, to determine, whether
the facts ascertained by the survey are such as
bring the case within the terms of the stipula-
tion.

We are of opinion they are. It would be
difficult to find a shade of difference in this re-
spect, between the present case and that of Dorr.
The terms of this certificate are, "we found the
timbers and bottom plank *so much decayed*, that
we are unanimously of opinion her repairs would
cost more than she would be worth afterwards;
and that it would be for the interest of all con-
cerned she should be condemned as unworthy of
repairs on that ground. We did, therefore, con-
demn her as not seaworthy, and as unworthy of
repairs." Now it cannot be questioned that the
ground of condemnation here stated does not
stand single and unconnected with the estimated
cost of repairs. But does this vary the case?
We are of opinion it does not, since the con-
demnation of a vessel, on account of decay, can

never, in its nature, stand single and unconnected with the expense of repairs. It is the common place to which the question of condemnation must always have reference. It is hardly possible to conceive a case where a survey would be called in which a vessel might not be repaired or renovated, and still leave enough of the hull to maintain her identity. A state of hopeless and absolute decay, therefore, is never in the contemplation of the contract. And whether expressed or not, the consideration whether the value when repaired would exceed the expense, invariably enters into the decision of surveyors upon a question of seaworthiness.

As, then, her being decayed, so as to be unworthy of repairs, is equivalent to, and in fact the technical meaning of unseaworthiness, we are of opinion, that the certificate brings the case within the words of the stipulation.

It follows, that the Court were correct in refusing the evidence offered by the plaintiff.

Judgment affirmed.